Michael Zoldan; AZ Bar No. 028128
Jason Barrat; AZ Bar No. 029086
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com
jbarrat@zoldangroup.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Shannon Truong,** an Arizona resident;<br><br>Plaintiff,<br><br>v.<br><br>**Garden View Townhomes, LLC**, an Arizona company; **Franciszek Janowiak,** an Arizona resident; and **Elzbieta Janowiak,** an Arizona resident;<br><br>Defendants. | Case No. 2:19-CV-05398-DLR<br><br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>**(Assigned to the Hon. Douglas L. Rayes)** |

Plaintiff Shannon Truong[1] (hereinafter "**Plaintiff**"), by and through undersigned counsel, hereby files this Motion for Summary Judgment against Defendants Garden View Townhomes, LLC and Franciszek Janowiak[2] (hereinafter together "**Defendants**") in connection with Plaintiff's claims for failure to pay federal minimum wages, Count I, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (hereinafter "**FLSA**") and failure to pay Arizona state law minimum wages, Count II, A.R.S. §§ 23-362 - 23-364 ("**Arizona Minimum Wage Statute**" or "**AMWS**").

---

[1] Plaintiff is also known as: Shannon Truong, Shannon Gana, Shannon Wu, and Mai. (Ex. 1 at ¶ 3).

[2] Mr. Janowiak is also known as Frank.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Relief Sought by This Summary Judgment Motion

Based on the applicable law and undisputed facts, summary judgment is warranted on the following discreet issues. Plaintiff seeks summary judgment relief regarding:

1.) Plaintiff's misclassified independent contractor status in which she should have been classified as an employee under the FLSA;

2.) Plaintiff's misclassified independent contractor status in which she should have been classified as an employee under the AMWS;

3.) Plaintiff's claim that she was not paid minimum wage in violation of the AMWS;

4.) Plaintiff's claim that she was not paid minimum wage in violation of the FLSA;

5.) Plaintiff's claim that Defendant Franciszek Janowiak is Plaintiff's employer under the FLSA;

6.) Plaintiff's claim that Defendant Franciszek Janowiak is Plaintiff's employer under the AMWS;

7.) Defendants did not keep proper records and Plaintiff is entitled to her estimated time working.

## II.  Background Undisputed Facts

Plaintiff worked for Defendants between May 1, 2015 through September 20, 2019. (Ex. 1 at ¶ 4), (Ex. 2 at pgs. 2, 9, NUIs 2, 10), (Ex. 7 at pg. 10). Plaintiff received no monetary wages for work she performed for Defendants. (Ex. 1 at ¶ 6), (Ex. 5 at pg. 3, RFA 7). Defendants terminated Plaintiff on or around September 20, 2019. (Ex. 1 at ¶ 5), (Ex. 2 at pg. 9, NUI 10). Plaintiff's job duties included collecting rent, accepting rental applications, showing units, watching for general safety of the complex, daily pool duties, unlocking the pool at open, closing the pool at close, general property cleanup, and turning the gate off before storms. (Ex. 7 at pgs. 2, 11), (Ex. 1 at ¶ 7, 10), (Ex. 4). Defendants did not maintain and do not have any records of the time Plaintiff worked or monetary wages

earned. (Ex. 2 at pgs. 3, 4, 6, NUIs 3, 7), (Ex. 5 at pg. 2, RFAs 1, 2). Defendants have no documents evidencing hours, timecards, timesheets, work schedules, recorded statements, and/or calendars for Plaintiff. (Ex. 8 at pg. 3, RFP 4).

**III.   The Economic Reality Test Proves that Plaintiff is an Employee Pursuant to the FLSA and AMWS.**

**A.  Under the Economic Reality Test Plaintiff is an Employee Under the FLSA**

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d). "employ" includes to suffer or permit to work. *Id* at 203(g). The US Supreme Court has instructed lower courts to interpret the term "employ" (as defined in the FLSA) expansively in order to effectuate the broad remedial purposes of the Act. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the verb "employ" under the FLSA is defined with "striking breadth"); s*ee also United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945) (noting FLSA definition of employee is "broadest definition that has ever been included in any one act.").

To determine whether an individual is an employee under the FLSA, courts consider the "economic reality" of all of the circumstances concerning whether the putative employee is economically dependent upon the alleged employer. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

In order to assess the degree of economic dependence, the "economic reality" test considers several factors, including:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry,* 603 F.2d 748, 754 (9th Cir. 1979). "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends "upon the circumstances of the whole activity*." Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947)." *Id*. "Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA. *See Rutherford Food Corp. v. McComb*, supra,331 U.S. at 729, 67 S.Ct. 1473;*Usery v. Pilgrim Equipment Co*, supra, 527 F.2d at 1315." *Id*. at *755.

Plaintiff and Defendants signed five different "Independent Contractor Agreement[s]." (Ex. 1 at ¶ 7), (Ex. 4). Defendants sole basis for claiming Plaintiff was an independent contractor, rather than an employee, is based on the independent contractor agreements the parties signed. (Ex. 3 at pgs. 1 – 4, NUI 11). Although Plaintiff and Defendants signed independent contractor agreements, "[a] contractual label does not determine employment status, nor does the subjective intent of the parties to a labor contract override the economic realities." *Gillard v. Good Earth Power AZ LLC*, No. CV-17-01368-PHX-DLR, 2019 WL 1280946, at *7 (D. Ariz. Mar. 19, 2019). The proper analysis is the economic reality test and so the contract and contractual label in which Plaintiff signed should be given no weight in the determination of Plaintiff's status as an employee or independent contractor.

### 1. Degree of control over manner work is performed

An employee need not be supervised at all times in order for an employer to "control" their work. *See Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1064 (D. Or. 2010), *as amended* (May 13, 2010) ("The fact that the laborers are not supervised in detail at all times does not necessarily mean they are not 'employees.'"). "'Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.'" *Mathis*, 242 F.Supp.2d at 783 (quoting *Usery v. Pilgrim Equip. Co.*, Inc., 527 F.2d 1308, 1312–13 (5th Cir. 1976)).

*Olson v. United States by & through Dep't of Energy & Bonneville Power Admin.*, No. 3:15-CV-02216-HZ, 2018 WL 2090604, at *7 (D. Or. Apr. 30, 2018).

The five agreements laid out a list of duties that Plaintiff was to perform and did perform:

- Show apartments when vacant. (Ex. 4 at pgs. 1-5).
- Watch for safety of complex. (Ex. 4 at pgs. 1-5).
- Daily pool duties as discussed (clean, etc.). Unlock 9am-close 9pm. (Ex. 4 at pgs. 1-3).
- Daily Pool duties as discussed (clean, etc), open 10am – 9pm close (varies). (Ex. 4 at pgs. 4, 5).
- General property cleanup. (Ex. 4 at pgs. 1-5).
- Turn gate off before storm. (Ex. 4 at pgs. 1-5).
- Collect Rent, process past dues, non-compliant notices, evictions. (Ex. 4 at pgs. 4,5).

In *Smith v. City of Phoenix*, No. 2:14-CV-0936-HRH, 2015 WL 6811660 (D. Ariz. Nov. 6, 2015), Plaintiffs signed a Tenant Resident Assistant (TRA) Agreement each year they were Resident Assistants (RAs). "The TRA Agreement provided that an RA "shall be an independent contractor and shall not be an employee of the City." The TRA Agreement further provided that the RA "agrees that he or she is not an employee of the City[.]"" The TRA Agreement provided a list of services that the RAs were to provide. The RAs were provided a rent-free apartment and a monthly stipend. The Court concluded that "[b]ased on the totality of the circumstances here, as a matter of law, plaintiffs were not independent contractors. Although defendant did not exert total control over the manner in which plaintiffs' work was to be done, defendant provided a list of duties that plaintiffs were to perform and the Pine Tower manager at times assigned additional tasks to them such as helping to prepare and deliver the monthly rent statements." *Id*. at *4.

Similar to our case, Defendants provided Plaintiff a list of duties to perform in their "Independent Contractor Agreements[s]." (Ex. 4). Defendants then required Plaintiff to perform additional tasks such as requiring her to accept rental applications (Ex. 2 at pg. 2, 3, NUI 2), handle tenant maintenance requests (Ex. 9 at pg. 53, ln 15 -25), (Ex. 10 at pgs.

23-24, ln 16-10), (Ex. 12 at pgs. 23-24, ln 23-21), (Ex. 13 at ¶ 8, 11), handle tenant complaints (Ex. 11 at ¶ 14), general tenant assistance (Ex. 14 at ¶ 6, 8, 9), (Ex. 15 at ¶ 6 – 8), (Ex. 13 at ¶ 9 - 12, 14), (Ex. 16 at ¶ 12), and assist or shadow Frank during maintenance requests/repairs, (Ex. 10 at pg. 18, ln 3-15), (Ex. 11 at ¶ 15).  In the morning, Plaintiff reported to Mr. Janowiak on a daily basis. (Ex. 2 at pgs. 3, 4, 6, NUI 3, 7), (Ex. 11 at ¶ 15), (Ex. 14 at ¶ 10), (Ex. 16 at ¶ 7, 9 - 11).

Similar to *Smith*, Plaintiff performed all her duties in the agreements and additional duties that Defendants assigned her to do throughout her employment. She also reported directly to her supervisor, Defendant Mr. Janowiak, on a daily basis.

Therefore, Defendants exercised sufficient control over Plaintiff's work duties to establish that she was an employee rather than a stand-alone contractor. This factor weighs in favor of Plaintiff being an employee.

**2.    Opportunities for profit or loss depending upon managerial skill**

Defendants admit that "Plaintiff did not have an opportunity for profit or loss depending on her skill or job performance or otherwise." (Ex. 3 at pg. 3, NUI 11(2)).  Therefore, this factor weighs in favor of Plaintiff being an employee.

**3.    Investment in Equipment or Materials Required for her task, or her Employment of Helpers.**

Defendants admit that "Plaintiff did not invest in equipment or materials…. She was not required to and never did employ helpers." (Ex. 3 at pgs. 3, 4, NUI 11(3)). Therefore, this factor weighs in favor of Plaintiff being an employee.

### 4. Whether the Service Rendered Requires a Special Skill

Defendants admit that "[t]he services required of Plaintiff did not require any special skills." (Ex. 3 at pg. 4, NUI 11(4)). Therefore, this factor weighs in favor of Plaintiff being an employee.

### 5. The Degree of Permanence of the Working Relationship

Plaintiff's working relationship with Defendants began on or around May 1, 2015 through when she was terminated on or around September 20, 2019. (Ex. 2 at pgs. 2, 9, NUI's 2, 10), (Ex. 7 at pg. 10). During the time Plaintiff worked for Defendants, they did not have any other employees or workers. (Ex. 2 at pgs. 4, 5, NUI 5).

"[I]t is undisputed that either Plaintiffs or Defendants could have terminated the working relationship at any time and that evidence favors an employment relationship. *See Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 785 (D. Or. 2002)" *Dyrhaug v. Tax Breaks Inc.*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *10 (D. Ariz. Sept. 15, 2015). Defendants admit that "the working relationship could be terminated by either party at its and/or her own discretion." (Ex. 3 at pg. 4, NUI 11(5)).

*See Smith v. City of Phoenix* at *5 (where the alleged employment relationship lasted for three to seven years this factor suggested a "high degree of permanence in the working relationship, even though plaintiffs signed a new contract each year"). For over four years, Plaintiff worked for Defendants. (Ex. 2 at pgs. 2, 9, NUIs 2, 10), (Ex. 7 at pg. 10).

Therefore, this factor weighs in favor of Plaintiff being an employee.

### 6. Whether the Service Rendered is an Integral Part of the Employer's Business

Defendants admit that they "are in the business of property management of the Garden View Townhomes." (Ex. 6 at pg. 2, RFA 18). In Defendants' answer they admit that "Plaintiff's primary job duties included showing apartments; watch for general safety of the apartments; daily pool duties which included cleaning, unlocking, and locking; general property cleanup; turning the gate off before a storm; collecting rent, past dues, non-

compliant notices, evictions; and managing and taking care of all of the properties." (Dkt. 16 at ¶ 57), (Dkt. 32 at pg. 4). Defendants admit that Plaintiff's job would require her to receive rent payments from tenants, accept rental applications, show vacant apartments to perspective tenants, walk the complex to see if there were any clean-up or safety issues, clean the pool, and sweep the pool. (Ex. 2 at pgs. 2, 3, NUI 2).

It cannot be credibly argued that Plaintiff's role as a property manager that included collecting rent, showing vacant apartments, cleaning the property, and other rental duties is not integral to Defendants' business as a property management company. Therefore, this factor weighs in favor of Plaintiff being an employee.

### 7. Consideration of All Factors

Because all factors weigh in favor of Plaintiff being an employee, the Court should rule as a matter of law that Plaintiff is an employee under the FLSA.

### B. Under the Economic Reality Test Plaintiff is an Employee Under the AMWS

"[W]hether a person is an independent contractor or an employee shall be determined according to the standards of the federal fair labor standards act, but the burden of proof shall be upon the party for whom the work is performed to show independent contractor status by clear and convincing evidence." A.R.S. § 23-362(D).  Therefore, because Plaintiff is an employee under the FLSA, she is also an employee under the AMWS.

## IV. Arizona Minimum Wage Statute (Count II)

Under the AMWS, "[e]mployers shall pay employees no less than the minimum wage, which shall be not less than:" $8.05 on and after January 1, 2015, $10.00 on and after January 1, 2017, $10.50 on and after January 1, 2018, $11.00 on and after January 1, 2019. A.R.S. § 23-363(A). "A civil action to enforce this article may be commenced no later than two years after a violation last occurs, or three years in the case of a willful violation, and may encompass all violations that occurred as part of a continuing course of employer

conduct regardless of their date." A.R.S. § 23-364(H). Therefore, because Plaintiff instituted litigation on October 14, 2019 (Dkt. 1), and the last violation occurred in September 2019, Plaintiff can recover full AMWS damages from the beginning of her employment on May 1, 2015.

Plaintiff is entitled to her Arizona minimum wage.  As discussed above, Plaintiff is an employee. As discussed below in section VI, Defendants are Plaintiff's employer. Defendants admit that they did not pay Plaintiff monetary wages.  (Ex. 5 at pg. 3, RFA 7). Therefore, Plaintiff is entitled to summary judgment on liability on her AMWS claim.

### Defendants Have No Claim for Any Rental or Lodging Setoff Under the AMWS.

In 2006, Arizona voters passed the Raise the Arizona Minimum Wage for Working Arizonans Act (the "Act"), which authorized the Industrial Commission of Arizona ("ICA") to promulgate regulations in order to "enforce and implement" the Act. A.R.S. § 23-364(A). The Act requires employers to pay their employees no less than the minimum wage. *Id*. § 23-363(A). The ICA defined "minimum wage" as "the lowest rate of monetary compensation required under the Act." Ariz. Admin. Code ("A.A.C.") § R20-5-1202(10); accord A.R.S. § 23-362(E) ("'Wage' means monetary compensation due to an employee by reason of employment...."). Any doubt about whether non-monetary compensation is included in Arizona's minimum wage is extinguished by the ICA's explanation that "[c]redit for the value of lodging and other items is not allowed when computing an individual's entitlement to receive minimum wages under the act." Indus. Comm'n Ariz., Arizona Minimum Wage Act: Frequently Asked Questions & Answers at *5 (Jan. 1, 2013) [hereinafter ICA, FAQ].

*Reyes v. LaFarga*, No. CV-11-1998-PHX-SMM, 2013 WL 12098794, at *1 (D. Ariz. Nov. 20, 2013). "It is clear that evidence of non-monetary compensation would be irrelevant to Plaintiff's state law minimum wage claim." *Id*. at *2. Any argument by Defendants that they are entitled to a setoff or deduction for a rental credit is without merit regarding the AMWS.

"Any employer who fails to pay the wages…under this article *shall* be required to pay the employee the balance of the wages…including interest thereon, and an additional

amount equal to twice the underpaid wages. A prevailing plaintiff *shall* be entitled to reasonable attorney's fees and costs of suit." A.R.S. § 23-364(G) (emphasis added).

Therefore, regardless of the amount Plaintiff is awarded, she shall recover twice that amount, interest, attorneys' fees, and costs.

### V.     FLSA – Minimum Wage (Count I)

"To establish a minimum-wage or overtime violation of the FLSA, Plaintiff must establish three elements: (1) she was an employee of Defendants, (2) she was covered under the FLSA, and (3) Defendants failed to pay her minimum wage or overtime wages. 29 U.S.C. §§ 206(a), 207(a). There are two types of coverage under the FLSA: individual and enterprise. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914 (9th Cir. 2003)." *Smith v. Nov. Bar N Grill LLC*, 441 F. Supp. 3d 830, 834–35 (D. Ariz. 2020).

Coverage exists if either the employee is engaged in commerce (individual coverage), 29 U.S.C. § 203(b) or the employer is an enterprise engaged in commerce (enterprise coverage). 29 U.S.C. § 203(s) *see Zorich v. Long Beach Fire Dep't & Ambulance Serv., Inc.,* 118 F.3d 682, 686 (9th Cir.1997) (interpreting identical language in 29 U.S.C. § 206). *Chao v. A-One Med. Servs., Inc.,* 346 F.3d 908, 914 (9th Cir. 2003).

If the Court finds that Plaintiff is an employee and not an independent contractor, the first element is met. Defendants admit that "if Plaintiff is found to be an employee she was covered under the individual coverage as defined by statute." (Ex. 6 at pgs. 1, 2, RFA 11). Therefore, the second element is met. As for the third element, it is admitted that Plaintiff worked at least ten hours a week. (Ex. 2 at pg. 2, 5, NUIs 2, 6). Also, as discussed below in section VII, Defendants did not keep proper time records and Plaintiff is entitled to her estimated working hours. Defendants admit that they did not pay Plaintiff monetary wages. (Ex. 5 at pg. 3, RFA 7). Therefore, Plaintiff is entitled to summary judgment on liability on her FLSA claim.

"An employer who violates [the FLSA] "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages ... and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). When assessing liquidated damages, "[d]ouble damages are the norm." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)." *Sao v. Pro-Tech Prod. Inc.*, No. CV-19-05261-PHX-JJT, 2019 WL 6909566, at *2 (D. Ariz. Dec. 19, 2019). "[T]he Ninth Circuit has read a timeliness requirement into the FLSA. "[U]nder the FLSA wages are 'unpaid' unless they are paid on the employees' regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993) (holding the State of California violated the FLSA when it paid its highway maintenance workers 14–15 days late due to lack of funds in the state budget). "[P]ayment must be made on payday, and ... a late payment immediately becomes a violation equivalent to non-payment." *Rother v. Lupenko*, 515 F. App'x 672, 675 (9th Cir. 2013) (citing *Biggs*, 1 F.3d at 1554)." *Id*. at *4. "Title 29 U.S.C. section 216(b) provides that an award of attorneys' fees [and costs] "shall" be made to the successful plaintiff. 29 U.S.C. § 216(b). Therefore, "[t]he award of an attorney's fee is mandatory" if a plaintiff prevails in the FLSA action. *Houser v. Matson*, 447 F.2d 860, 863 (9th Cir. 1971) (citation omitted); *see also Christiansburg Garment Co.*, 434 U.S. at 415 n.5, 98 S.Ct. 694 (noting that a fee award is "mandatory for prevailing plaintiffs" in actions brought under FLSA)." *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 478 (D. Ariz. 2019).

Therefore, regardless of the amount Plaintiff is awarded, she shall recover twice that amount in liquidated damages, attorneys' fees, and costs.

**VI.    Defendants are Employers Under the FLSA and AMWS**

   **A.  Defendant Franciszek Janowiak is Plaintiff's Employer Under the FLSA**

Only "employers" are liable for FLSA violations. 29 U.S.C. § 216(b). The Act defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit states the definition "is to be given an expansive interpretation." *Lambert v. Ackerley*, 180 F.3d 997, 1011–12 (9th Cir. 1999). Where a corporate officer "exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (internal quotations omitted). The Ninth Circuit applies a four-factor "economic reality" test that considers whether the individual (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *disapproved of on other grounds*. These factors are not exclusive or "etched in stone," and no one factor is controlling. *Id.* The existence of an employer-employee relationship depends upon the relationship and the circumstances as whole. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

*Ader v. SimonMed Imaging Inc.*, No. CV-17-02085-PHX-JJT, 2020 WL 3078350, at *15 (D. Ariz. June 10, 2020). "In *Lambert,* we upheld a finding of liability against a chief operating officer and a chief executive officer where the officers had a "'significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009).

"Frank Janowiak entered into the Independent Contractor Agreement with Plaintiff, agreed to the manner and rate of compensation set forth therein, and ultimately terminated Plaintiff in September 2019…Defendant Janowiak maintained records pertaining to Plaintiff, including the Independent Contractor Agreements, referenced above." (Ex. 2 at pgs. 8, 9, NUI 10). In the morning, Plaintiff reported to Mr. Janowiak on a daily basis. (Ex. 2 at pgs. 3, 4, 6, NUI 3, 7), (Ex. 11 at ¶ 15), (Ex. 14 at ¶ 10), (Ex. 16 at ¶ 7, 9 - 11). "Mr. Janowiak is the manager and member of Co-Defendant, Garden View Townhomes, LLC. Mr. Janowiak will testify to his ownership and the operation of the Garden View Townhomes, LLC, until its sale in October 2019." (Ex. 7 at pg. 2). Mr. Janowiak was the

owner of Garden View Townhomes, LLC, and the complex's manager. (Ex. 7 at pg. 2). Mr. Janowiak actively managed the complex and was physically present six, and at times seven, days a week." (Ex. 7 at pgs. 9, 10). "Mr. Janowiak's years of operations of the Garden View Townhomes found there to be occasions when a tenant wished to pay rent or a potential tenant wished to see a vacant apartment when he was unavailable. Therefore, Mr. Janowiak agreed Ms. Truong could provide assistance in exchange for, at first, a partial rent credit, and soon after, a full rent credit." (Ex. 7 at pg. 10). The five "Independent Contractor Agreement[s]" were "between Franciszek Janowiak, owner of Garden View Townhomes LLC…and [Plaintiff]". (Ex. 4).

Mr. Janowiak admits that he was the owner, manager, and member of Garden View Townhomes until October 2019. He had complete knowledge, control, and actively managed the complex. He admits that he was physically present six, and at times seven days a week. Therefore, Mr. Janowiak had a significant ownership interest with operational control of significant aspects of the business's day-to-day functions.

Mr. Janowiak admits to entering into an Independent Contractor Agreement with Plaintiff (hiring Plaintiff) and then firing Plaintiff in September 2019. Mr. Janowiak admits that Plaintiff would report to him daily. Mr. Janowiak admits to agreeing to the manner and rate of compensation set forth in the Independent Contractor Agreement. Mr. Janowiak admits to maintaining records pertaining to Plaintiff. Therefore, the four-factor "economic reality" test has been met and Defendant Franciszek Janowiak is an employer under the FLSA and should be held individually and jointly liable for all damages.

**B. Defendant Franciszek Janowiak is Plaintiff's Employer Under the AMWS.**

"Under A.R.S. § 23-363(A)(1), "[e]mployers shall pay employees no less than the minimum wage, which shall be not less than $10 on or after January 1, 2017." The term "employer" is defined, in relevant part, as "any corporation, proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee." A.R.S. § 23-362(B)." *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2019 WL 7048773, at *24 (D. Ariz. Dec. 23, 2019).

In *Cramton,* the Court compared "case law interpreting the meaning of "employer" under the FLSA [and AMWS] because the two statutes define the term in similar ways." *Id*. The Court used the same FLSA economic reality test to determine whether an individual would constitute an employer under the AMWS. The *Cramton* Court ultimately determined that a corporate attorney was not individually liable under the FLSA and therefore also not under the AMWS. Even so, it gives guidance that individual liability under the AMWS uses the same economic reality test as the FLSA. Also see *Solie v. Health Care@Home LLC*, No. CV-19-05399-PHX-JJT, 2020 WL 1821257, at *6 (D. Ariz. Apr. 10, 2020) ("Because the parties do not cite any cases interpreting the meaning of "employer" under the AMWA, the Court will look to case law interpreting the FLSA definition because the two statutes define the term similarly. *See* 29 U.S.C. § 203(d); A.R.S. § 23-362; *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2019 WL 7048773, at *24 (D. Ariz. Dec. 23, 2019).").

Therefore, because Defendant Franciszek Janowiak is an employer under the FLSA, he should also be an employer under the AMWS and should be held individually and jointly liable for all damages.

## VII. Defendants Did Not Keep Proper Records and Therefore Plaintiff is Entitled to Her Estimated Hours Worked.

An employee has the burden of proving that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds*. However, where the employer fails to keep adequate records of the employee's hours—as is often the situation in a misclassification case—the employee's burden is lightened. The employee must only (1) prove that he has in fact performed work for which he is owed overtime, and (2) produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. 1187. This lower standard exists to avoid penalizing an employee and rewarding an employer for the latter's statutory violations. *See id.* Once an employee establishes the amount and extent of overtime worked as a matter of just and reasonable inference, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688, 66 S.Ct. 1187. In sum, "an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA." *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).

*Ader v. SimonMed Imaging Inc*., No. CV-17-02085-PHX-JJT, 2020 WL 3078350, at *6 (D. Ariz. June 10, 2020).

"Employers shall maintain payroll records showing the hours worked for each day worked, and the wages… to all employees for a period of four years.  Failure to do so shall raise a rebuttable presumption that the employer did not pay the required minimum wage rate." A.R.S. § 23-364(D).

Defendants admit they "did not maintain and [do] not have any records of the time Plaintiff worked. (Ex. 2 at pg. 6, NUI 7). Defendants admit they have no documents evidencing hours, timecards, timesheets, work schedules, recorded statements, and calendars for Plaintiff. (Ex. 8 at pg. 3, RFP 4), (Ex. 2 at pg. 3, 4, NUI 3).

Plaintiff estimates that she worked approximately four to five hours per day on items that were listed in the "Independent Contractor Agreement[s]." (Ex. 9 at pg. 56, ln 9 – 16).

Kay Kyle is a tenant that resided in Garden View Townhomes #19 for over 10 years. (Ex. 11 at ¶ 5, 6). Ms. Kyle personally witnessed Ms. Truong working over an abundant number of hours, in excess of the previous manager's seven hours per day set schedule. (Ex. 11 at ¶ 7 - 9). Reginald Baker is a tenant that resided in Garden View Townhomes #17. (Ex. 14 at ¶ 5). Mr. Baker witnessed Plaintiff outside every day at 7am and was available from 6am through 7pm, seven days a week. (Ex. 14 at ¶ 6, 7, 11). Jeffrey Olson is a tenant that resided in Garden View Townhomes #7 for 12 years. (Ex. 15 at ¶ 5). Mr. Olson personally saw residents besides himself go to Plaintiff's unit regarding maintenance, rent, and general issues and could contact her 7 days a week, day or night, no matter what time it was. (Ex. 15 at ¶ 6 - 10). Lucia Montano was a tenant that resided in Garden View Townhomes #13 from April 2015 to October 2017. (Ex. 13 at ¶ 5, 6). Ms. Montano could find Plaintiff on the property any day or night, including the weekends. She was told by Mr. Janowiak that Plaintiff was on-call 24 hours a day, 7 days a week. (Ex. 13 at ¶ 9 - 12, 14). Ms. Montano was offered Plaintiff's job when she first moved to the property but declined because she was only available in the mornings but was required to be on the property 24 hours a day, 7 days a week. (Ex. 13 at ¶ 15). Cindy Jones was a tenant that resided in Garden View Townhomes #17 and currently lives in #26. (Ex. 16 at ¶ 5). Ms. Jones witnessed Mr. Janowiak demand that Plaintiff be available on the property 24 hours a day. She personally witnessed Mr. Janowiak force Plaintiff to walk the property every morning at 5:00 am. She personally witnessed Plaintiff go to different properties after business hours at 10:00 pm and would personally accompany Plaintiff on these visits. (Ex. 16 at ¶ 7 – 10, 12).

In addition to these five witnesses, who swore under oath, Plaintiff subpoenaed her phone records from Sprint and color-coded phone calls to/from thirteen tenants and Mr. and

Mrs. Janowiak. (Ex. 19 at ¶ 5 - 11), (Ex. 17), (Ex. 18).[3] Plaintiff communicated with Defendants, tenants, and vendors via cell phone. (Ex. 20 at pgs. 2 - 4, RFAs 12 - 16). In addition to phone calls, Plaintiff would communicate through text messages with Mr. Janowiak and multiple tenants. (Ex. 1 at ¶ 8). Unfortunately, Plaintiff lost her phone and all of her text messages were lost. (Ex. 1 at ¶ 9). Plaintiff did receive a portion of 2019 text messages from Mr. Janowiak. (Ex. 21).[4]

In *Ader*, the Court analyzed many cases to determine what is needed for Plaintiff to estimate her time if Defendants do not have records. "[E]stimates are not fatal. They are expected, and frequently relied upon in cases where the employer failed to keep accurate time of an employee's hours. *See, e.g.*, Alston v. DIRECTV, Inc., 254 F. Supp. 3d 765, 788 (D.S.C. 2017) ("[A]n FLSA plaintiff's estimations offered in sworn statements as to the amount of improperly compensated work is, alone, sufficient to meet his initial burden under the [*Mt. Clemens*] framework.")" *Id*. at *6. The Court notes that the Ninth Circuit takes "a more relaxed approach" than other Circuits. *Id*. at *7.

Therefore, because Defendants did not keep proper records, the Court should use Plaintiff's testimony, five witnesses' sworn statements (two of which were deposed by Defendants), the voluminous phone records, and text messages to show that Plaintiff is entitled to her sworn estimation of hours worked to be between four to five hours per day. 4.5 hours per day * 7 days = 31.5 hours per week.

**VIII.   Damages**

  **A.   FLSA Damage Calculation**

---

[3] Plaintiff does not expect the Court to look deeply into the voluminous 750-pages of phone records. Plaintiff's reason for disclosing it is for the Court to glimpse at how many phone calls she received every day of the week at different times by tenants and the Janowiaks.
[4] Again, this is just to show the Court the voluminous amount of text messages.

The federal minimum wage is $7.25 an hour. 29 U.S.C. § 206(a). Plaintiff filed her Complaint on October 14, 2019. (Dkt.1). Plaintiff was terminated on September 20, 2019. There were 101 weeks between October 14, 2017 and September 20, 2019. Plaintiff is not claiming damages between November 8, 2018 through December 31, 2018. Therefore, Plaintiff is entitled to 93 weeks.

Plaintiff is entitled to her estimation of hours worked which is approximately 31.5 hours per week. Therefore, Plaintiff is entitled to 31.5 hours * 93 weeks * $7.25 = $21,238.88. She is entitled to liquidated damages which equal $21,238.88 * 2 = $42,477.76.

**B.     AMWS[5]. Damage Calculation**

Plaintiff is entitled to damages throughout her full employment. A.R.S. § 23-364(H).

In 2015, 35 weeks * 31.5 hours per week * $8.05 an hour = $8,875.13.

In 2016, 52 weeks * 31.5 hours per week * $8.05 an hour = $13,185.90.

In 2017, 52 weeks * 31.5 hours per week * $10.00 an hour = $16,380.

In 2018, 44 weeks * 31.5 hours per week * $10.50 an hour = $14,553.

In 2019, 37 weeks * 31.5 hours per week * $11.00 an hour = $12,820.50.

Plaintiff is entitled to $65,814.53. Double damages, Plaintiff is entitled to $131,629.06.

**IX.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests the Court grant summary judgment on the issues and claims discussed above. Plaintiff respectfully requests the Court grant Plaintiff $131,629.06 in damages plus interest, reasonable attorneys' fees, and costs.

///

///

///

---

[5] Plaintiff understands that she cannot be awarded both minimum wages under the FLSA and the AMWS; just the greater amount.

RESPECTFULLY SUBMITTED September 21, 2020

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Jason Barrat
14500 N. Northsight Blvd. Suite 133
Scottsdale, AZ 85260
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2020, I electronically transmitted the foregoing document to the United States District Court, District of Arizona, Court Clerk, using the CM/ECF System. All counsel of record are registrants and are therefore served via this filing and transmittal.

/s/ Ashley Peschke